Carr v. Catlin.

---

### E. T. CARR, et al., v. GEORGE O. CATLIN, et al.

1. ADMINISTRATOR; *Partnership Property; Liability.* Where one member of a partnership dies intestate, and the administrator of his individual estate gives the second bond required by the statute, and takes possession of the entire partnership property for the purpose of settling up the partnership estate, and thereafter converts such property to his own use, an action can be maintained against him and the sureties on said second bond, by any partnership creditor, without any allowance of such creditor's claim in the probate court, or any settlement of the partnership affairs in such court.

2. PROBATE COURT; *Jurisdiction over Surviving Partner; Citation; Appearance of Party.* The citation to the surviving partner, provided for by § 49 of the Executors Act of 1859, (Comp. Laws, 520; Gen. Stat., 437, § 35,) only serves to bring such partner into court; and if without any citation he comes into the probate court and files a written refusal to close up the partnership business, the court has jurisdiction to direct the administrator of the decedent to give bond and take charge of the entire partnership assets, and the bond given in pursuance thereof is valid.

3. WRITTEN INSTRUMENTS; *Construction.* Every instrument must be construed in the light of the circumstance under which it was executed, and sometimes these circumstances will make perfectly plain the otherwise doubtful intent of the party executing it.

4. SURVIVING PARTNER; *Refusal to Continue Business.* No form is prescribed for the refusal of a surviving partner to give bond and close up the partnership affairs, and a statement that he "refuses to continue the business of the late firm, and requests the administrator of the decedent to take charge of his interest in the property of said firm," is sufficient.

5. ADMINISTRATOR'S BOND. The bond in this case given by the administrator on taking possession of the partnership property is held to be good, notwithstanding it specifies in greater detail than required by the statute, the obligation of the administrator.

6. ACTION — *When Accrues; Statute of Limitation.* No action accrues against an administrator in his individual capacity until there has been some violation of his trust, nor against the sureties on his bond until there has been some breach of the conditions of the bond; and then the statute of limitations begins to run from the date of such violation and breach.

*Error from Leavenworth District Court.*

ACTION by *Catlin* and two others, partners as "Catlin & Co.," commenced against *Carr*, Clark, and *Mills*, as sureties in a bond given July 13th, 1866, by Samuel S. Ludlum, administrator of the estate of Wm. H. Hays, deceased, for the proper execution of the trust imposed on him by taking possession of the partnership property of the firm of Hays & Ludlum. The plaintiffs were creditors of Hays & Ludlum, and they claimed that by reason of the unlawful conversion of said partnership property an action had accrued to them on said bond. The action was commenced October 24th 1868; an amended petition was filed July 20th 1869, and a second amended petition was filed in September, 1871, and in November 1872 the second amended petition was amended by attaching a copy of the bond sued upon. All three defendants answered the first and second petitions, and the defendants *Carr* and *Mills* answered the last amended petition. The action was tried at the May Term 1873. Verdict and judgment against *Carr* and *Mills* for $618.20. No finding, ver-

dict or judgment against Clark.   *Carr* and *Mills* bring the case here by petition in error.

*Clough & Wheat,* for plaintiffs in error:

No reason is known to us why judgment should not have been rendered against Thomas R. Clark, if it was proper to render judgment against Carr and Mills. We refer to said second amended petition, as it was finally amended, and to the answer of Carr and Mills thereto, and to the reply to said answer, and to the special verdict, and claim that there is not any cause of action established against Carr and Mills, and that therefore their motion for judgment should have been sustained. But, even if it is shown that there was once a cause of action against them, then we claim that the same was not sued for or on until said second amended petition was filed, on the 25th of September, 1871, and that the same was then, and also when the suit was first brought on the 24th of October, 1868, barred by the statute of limitations.

1. In support of our claim that there was not any cause of action found against Carr and Mills, we draw attention to the finding, from which it appears that John B. Ludlum, the surviving partner, never was cited, as required by §49 of ch. 91, Comp. Laws of 1862, p. 520. And as John B. Ludlum was at common law, and notwithstanding the statutes, entitled to the control and disposition of the partnership property until he should neglect or refuse to give bond after being cited for that purpose, (28 Mo., 181, and § 51 of said act,) we submit that the probate court had no power or jurisdiction to make any order in relation to the partnership property, or to assume jurisdiction over the same, or to require Samuel S. Ludlum to give the bond mentioned in § 50 of said act, and that therefore the bond sued on is void, because the proper steps had not been taken to divest such rights of John B. Ludlum, or to confer power to control the property on the administrator of the deceased partner: 23 Miss., 550; 1 Redfield, 331; 19 Md., 1; 4 Denio, 90; 8 Cranch, 9; 34 Cal., 464; 3 Allen, 87; 51 Barb., 514; 6

Blackf., 91; 4 Munford, 194; 10 Bosworth, 293; 14 Peters, 39; 19 Wis., 541; 24 Iowa, 131; 23 Ill., 489; Toller on Exr., 121; 36 Georgia, 241, 441.

This matter of citation was not mere form. Until thus cited, the surviving partner had the right to retain and dispose of the property. It was an act required to be done to divest John B. Ludlum of his otherwise right to control and dispose of the property, and that act of citation, not being done, we submit that John B. Ludlum was never divested of his rights to and concerning the partnership property, and if not, it of course follows that said bond was void. If it shall follow that said bond is good as a *voluntary* bond, then we suggest that unless it is one of the bonds mentioned in § 575 of the civil code of 1859, (civil code of 1868, § 726,) any cause of action arising from a breach thereof should have been brought in the name of *The State of Kansas;* (9 N. Y., 176; 28 How. Pr., 324; 113 E. C. L. R., 415 to 418; 37 Barbour, 520; 10 Wheaton, 406; 23 Miss., 548;) and of course unless said bond was such an one as was by some law authorized to be taken as an official bond, it is not one of those mentioned in said § 575. If it shall be claimed for plaintiff that the recitals in said bond estop Carr, Clark and Mills from denying that John B. Ludlum, after having been duly cited for that purpose, neglected or refused to give the bond required in said §§ 46 and 47, (those being some of the necessary facts to give the probate court jurisdiction over the partnership property,) then we say that inasmuch as it is not in the said bond recited or admitted that John B. Ludlum had been cited, (or that he had in or to the probate court refused to give such bond,) we submit said defendants are not so estopped, because an estoppel cannot be extended beyond the exact terms of the admission; (37 Ala., 346; 11 Shepley, 332; 11 How., 326; 39 Ill., 442.)

And it appears to us that the rule of law, that a party shall not be deprived of his property, or of his right to possess, control and dispose of property without due process of law, etc., would of itself render void all the proceedings of said

probate court in relation to said partnership property, and show that it is the duty of Samuel S. Ludlum, as an individual, to account to John B. Ludlum, as the surviving member of the firm, thus leaving the partnership creditors to look to John B. Ludlum as the representative of the late firm, rather than to found an action upon void proceedings of a probate court. And we submit that if such creditors are confined so far as the partnership property is concerned to such remedies as they may have against John B. Ludlum, not only will no rule of law be violated, but the idea evidently on the mind of John B. Ludlum, when he refused to continue the business of Hays & Ludlum, will be carried out; for if that paper is not utterly void, its legal effect was simply a refusal on the part of John B. Ludlum to continue the business of the late firm, and a request that the administrator of Wm. H. Hays, deceased, (whoever he might be,) should take charge of his (John B. Ludlum's) interest in the property of said firm—thus in substance merely appointing such administrator, whoever he might be, his agent to take charge of the property.

And further, in support of our claim that there was not any cause of action found against Carr and Mills, we draw attention to §§ 48 and 189 of said ch. 91, Comp. Laws, and to the want of any pretense in the pleadings on which the action was tried, of any judgment, or order of distribution, or for the administrator to pay any claim or claims; nor is there any finding that such was the fact, or of any order of the probate court for distribution or payment to be made by the administrator; and, therefore, we submit that the motion of said Carr and Mills for judgment should have been sustained. See §§ 48, 189, 190 and 227 of said act, and 2 Am. L. Cases, 135; 12 Wend., 492; 1 Watts, 437; 7 Ga., 31; 4 Penn. St., 344; 23 Miss., 284; 1 Sandf., 228; 8 Wheaton, 675; 15 Mo., 421; 11 How., 142; 11 Ark., 12; 2 Ohio St., 1. And we submit, that a reasonable construction of the aforesaid sections of said act, in connection with the other parts thereof, show that it was not the intention of the legislature that the admin-

istrator of a deceased partner should have the same power with reference to or to dispose of the property of a firm he might administer on under §§ 49 and 50 of said act, as the surviving partner would have, if he closed up the business of the firm.

2. The verdict is not sufficient to sustain the judgment. Even if defendants in error ever had a cause of action, it was barred by limitation. Although they alleged that their claim which was general *indebitatus assumpsit* for goods, wares and merchandise sold and delivered by plaintiffs to Hays & Ludlum, had been presented and allowed by the probate court, so as to bring themselves within the requirements of § 151, and the following sections of said act relating to allowance of claims, yet there was no proof or finding made of any such allowance, or presentation. It appears from the verdict that the debt sued for came due on the 6th of July, 1865, more than three years before the commencement of the first action, and more than five years before the second amended petition was filed, and there is, we submit, nothing in the verdict to take the case out of the ordinary three-year statute of limitations. It is very clear on said verdict that when the said action was first commenced in October, 1868, §§ 20 and 21 of the code of 1859 barred any action against the survivor, John B. Ludlum, for the money due for the goods sold, and also that the same sections then barred any action against the administrator for the goods sold, even leaving out the time (which we submit ought not to be done) which elapsed after the death of Hays, on the 26th day of March, 1866, to the 5th day of July 1866, the time Ludlum was appointed administrator, because from the 5th of July, 1865, the time when the debt came due, to the 24th of October, 1868, the time when the suit was first brought, is a period of three years and one hundred and nine days, so that the supposed cause of action, on which defendants in error sued, as their claim of indebtedness, was barred, so far as bringing any action therefor was concerned, at least nine, if not one hundred and nine days before the action was commenced, (*Toby v. Allen,*

3 Kas., 399,) and therefore no cause of action was shown by the verdict. And we submit that when the cause of action for the debt was barred by the limitation law, as above shown, that no action could be maintained as attempted by defendants in error; in this connection we refer to *Chick v. Willetts*, 2 Kas., 384; 41 Ill., 517; 35 Ga., 344, 358.

And further in this same connection, if defendants in error proved a cause of action against Carr and Mills but for the statute of limitations, we further submit, that if the supposed cause of action set forth in the last amended petition is other and different that the cause of action set forth in either of the preceding petitions, that therefore the supposed cause of action was not sued on until the 25th of September, 1871, even though it was filed in the same action. See the opinion of this court in the case of *Hiatt v. Auld*, 11 Kas., 176, and cases therein cited; 10 B. Mon., 84; 3 Kas., 412, 414; 3 Iredell's Ch., 585. But if such cause of action is not other or different than the one first sued on, in the same action, then the decision in *Glass Co. v. Ludlum*, 8 Kas., 40, (a similar case,) is conclusive against defendants in error. The record in said case in 8 Kas. will show, we think, that that case raised all the questions relied on by the present defendants in error, which among other things shows the indebtedness of Hays & Ludlum to the Company and a request for the district court to find conversion by the administrator of the firm property, and if the evidence in this case is sufficient to show the conversion found, then in that case it was sufficient to require a finding in relation thereto, but the judgment in that case was not reversed, notwithstanding the refusal to find on the alleged conversion.

3. We submit that the bond executed by Carr, Clark and Mills, with Samuel S. Ludlum, as his sureties, *is void*, because the conditions therein are not *any* of them the conditions specified in said § 50, ch. 91, Comp. Laws. The bond is void if the conditions thereof are not any of them the condition specified in said § 50: 39 Ill., 225; 48 Barb., 68; 1 Peters, C. C., 46; 4 Cranch, C. C., 255; 51 Penn. St., 417;

3 J. J. Marshall, 592; 10 Peters, 364; 12 Wheaton, 136 –150; 10 Mo., 700; 5 Pick., 226. The conditions in said bond after the first one therein written are substantially the conditions (as nearly as in the nature of the case they could be,) required in the bond of a surviving partner when he administers on the partnership estate, (see §§ 46 and 47 of said act,) are therefore void. (3 J. J. Marsh., 592; 8 Penn. St., 101.) And as to the first of the conditions in said bond, we submit that the only trust therein referred to, was that consequent upon and such only as resulted merely from S. S. Ludlum's having taken possession of the property, which as we have above seen, simply placed him under obligations as agent of John B. Ludlum; but even if it was an undertaking of which creditors could take advantage, it was not, we submit, sufficient to sustain the assignment of such breaches as are necessary to maintain the judgment complained of, even if the limitation and other objections raised shall be decided against us; and further, a bare receipt of assets is not the commencement of administration thereon; (2 Pen. & Watts, 482;) and as such taking possession was not the commencement of administration thereon, and as the first condition in said bond was merely to the effect "that Samuel S. Ludlum should faithfully execute the trust incurred by the act of taking possession of the partnership property, with no unnecessary waste or expense," and as that was not the condition required in a bond given in pursuance of said § 50, or by any other section of law, we submit it and the bond, so far as connected therewith, are both void. Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertakings. Presumptions and equities are never allowed to enlarge or in any degree change their legal obligations so as, by construction, to extend their undertaking. 9 Wheaton, 680, 720; 21 How., 67; 15 Peters, 187; 2 Wall. 235; 2 Nev., 139; 22 Ind., 392; 17 Wend., 422; 10 Johns., 180; 6 Hill, 540; 11 N. Y., 598.

*Stillings & Fenlon,* for defendants in error:

1. It was not necessary for the defendants in error to establish their demand in the probate court to entitle them to payment thereof out of the partnership assets of Hays & Ludlum; or, if the probate court had no jurisdiction to *allow, classify,* and order payment out of partnership assets, then of course no allegation need be made in the petition of the classification of their claim by the probate court, and an order on the administrator of William H. Hays to pay the amount allowed and classified. [Here follows an argument covering several pages, construing the executors-and-administrators act of 1859, (Comp. Laws of 1862, pp. 512 to 546,) which argument is adopted by the court, and inserted in the opinion, *infra,* pp. 404 to 407.]

2. Counsel for plaintiffs in error attempt to comfound this case with the case of *The Boston Glass Company v. Ludlum,* 8 Kas., 40; but there is a broad distinction between the two cases, as they appear in court, although the facts out of which both actions originally grew are the same. In that case, it will be remembered, the plaintiff based its action on the judgment or findings or orders of the probate court, alleging in its petition, first, that the estate of Wm. H. Hays had no property. On this allegation, Anthony and Dunlop, who were the sureties of Samuel B. Ludlum as administrator proper, demurred the plaintiff out of court, and properly so. But when they alleged, again, as against Carr and Mills, the defendants here, (plaintiffs in error,) that the probate court had settled the *partnership* estate, and ordered a payment to plaintiff out of such estate, they failed on the proof, for the court found from the records of the probate court that the estate settled and the order made was on the *individual* estate of Wm. H. Hays. So in that case Anthony and Dunlop defeated the plaintiff on his own pleading, and Carr and Mills beat the plaintiff on the failure of evidence to sustain the allegations of the petition. That case therefore is no criterion nor guide nor precedent for this. We take

26 —13 KAS.

totally different grounds.  We deny all and any powers in the probate court to adjudicate on partnership matters, other than to cite the administrator, acting as special trustee of the partnership property, or the survivor, should he act, to account for his doings.  If the surviving partner had taken the property, having given bond, and then had squandered and converted the property, in an action against him and his bondsmen, would any one contend it would be necessary for a creditor to first establish and classify his claim in the probate court? and is it not clear that the administrator by the statute simply takes the place of the declining surviving partner, assumes only his duties, and he and his bondsmen assuming precisely the obligations which the surviving partner and his bondsmen would have assumed if he had taken the partnership property?  Of course it is not contended, if the creditor here (defendants in error,) had desired to make the separate individual property of Wm. H. Hays responsible for this debt, that it would not have been incumbent on them to prove and classify their debt; but they had the right (being creditors of "Hays & Ludlum,") to look to the partnership property to pay their debt, and they elected so to do.  They knew, as the jury found, that there were sufficient partnership assets to pay all debts.  They demanded the payment of this debt from Ludlum, who was the special statutory trustee of this property, and for whose acts and for whose omissions, in respect to this special property, Mills and Carr made themselves liable.  Ludlum converted these assets to his own use, and apparently the only answer the sureties now give is, we will not pay because you did not prove your claim in the probate court.  If we had proved it there we would have been met with the fatal objections made in the Boston Glass Company's case, which doubtless would have been agreeable to Ludlum and his sureties. (22 Mo., 506; 27 Mo., 103.)

3.  No substantial question can be made on the statute of limitations.  The bond upon which this action is based was filed and approved on the 13th of July, 1866, and the action

commenced October 24, 1868. We are unable to see how any real question can be presented under the limitation statute.

The opinion of the court was delivered by

BREWER, J.: This was an action on a bond given by the administrator of the estate of Wm. H. Hays deceased, upon taking possession of the partnership property of the firm of Hays & Ludlum, of which firm the deceased was a member. It appears from the pleadings and special verdict that in March 1866 the firm of Hays & Ludlum was composed of Wm. H. Hays and John B. Ludlum; that the 26th of that month Wm. H. Hays died, intestate; that on the 5th of July Samuel S. Ludlum was appointed administrator of his estate; that thereafter the surviving partner filed in the probate court a written refusal to continue the business of the late firm, and a request that the administrator take charge of the partnership property; that the probate court ordered the administrator to take possession of said partnership property, giving a new bond therefor as provided by statute; that the administrator did take possession and give a new bond, the one sued on in this action; that he sold the property and converted the proceeds to his own use; that the partnership property he received was ample to pay all the partnership debts; that the firm of Hays & Ludlum was indebted to the plaintiff in the amount sued for, and that demand was made of the administrator for payment, and payment refused.

A great many questions are raised and discussed by counsel in their briefs. We shall notice only those we deem the most 1. Administrator; important. And first, can this action be main-partnership property. tained without proof of the allowance of the Liability on second bond. claim by the probate court, or of any settlement in said court by the administrator of the partnership estate? As the record stands, no action is shown of the probate court subsequent to the approval of the bond. After a careful examination of the statute and the authorities we must answer this question in the affirmative. We cannot express

our views better than in the language of the able counsel for defendants in error, and so quote from their brief:

The probate court is established by the constitution, (Art. 3, § 8,) and its powers are limited to "*such probate jurisdiction and care of estates of deceased persons * * * as may be prescribed by law.*" It would seem clear that unless there be some "law" specifically prescribing that the probate court shall have the power to *allow, classify* and order payments of partnership debts out of partnership assets, that no such power exists; it is a well-known rule that the powers of a court of limited jurisdiction are to be found only in the statute which confers them, that such a court takes nothing by intendment or construction. If then this power to allow, classify and order payments is not—to use the language of the constitution—"*prescribed by law,*" it does not exist, and it cannot with any show of reason be argued that such a power is necessary to the execution of any other power conferred by law upon the probate court. What powers, then, do we find are "*prescribed by law?*" The first forty-four sections of the act approved 30th July, 1859, the act under which the bond in this case was given, and the proceedings had out of which this action grows, apply wholly to the granting of letters and matters strictly connected therewith. The eight sections next following relate to the disposition of the property of a firm of which the deceased was a member. Sections 55 to 150, inclusive, prescribe the power of the court and the duty of the administrator respecting the money and property of the deceased. Sections 151 to 178 provide for the allowance and classification of demands *against the estate of deceased persons,* and specify the manner in which different characters of claims are *to be paid from the estate of the deceased,* and how *these claims* may be established. The sections then next following (§§ 180 to 196) prescribe the mode of settlement by administrators, and define the power of the court therein; from 197 to 222 inclusive, the statute prescribes the mode of distribution of the *decedent's estate.* And the balance of the statute provides for proceedings against executors and administrators and for appeals; and this comprises all the legislation on this subject. Shall it be claimed that the 151st section (Comp. Laws, 534,) confers the power on the probate court to classify the claim of the plaintiff? If there are no partnership assets, and the claim was sought to be made out of the individual property of William H. Hays, then

of course the court would have power under that section
to classify the demand; and then, to maintain an action on
the administrator's bond, probably it would be necessary to
allege an allowance and classification. But such is not the
case at bar. Here is a partnership debt, with partnership
assets sufficient to pay all such debts, and not a claim that is
sought to be enforced against the individual property of the
decedent. It is unquestioned law that the partnership debts
are to be paid in preference to individual debts out of the
partnership assets; yet if it can be maintained that § 151
confers the power on the probate court to classify partner-
ship debts, then the entire assets of the firm could or might
be employed in the payment of the individual debts of the
decedent, so setting aside a rule that has prevailed from time
immemorial. Such a construction is surely not to be forced,
and can only be conceded when the plain reading of the stat-
ute demands it. The legislature is speaking only in this sec-
tion of the estate proper of the decedent, and providing what
claims as against it shall be entitled to preference. No other
rational construction can be given to this section, especially
when we notice that the whole subject-matter of legislative
attention, as shown by the sections immediately preceding
and following, is the *estate proper of the decedent;* and this
conclusion, it would seem, becomes entirely irresistible when
we consider that this same law-making power which is now
speaking of debts of the deceased, and of the property of the
deceased, devotes several entire sections of this same law to
prescribing what shall be done with claims against a *partner-
ship*, and what disposition shall be made with *partnership
effects*. The two subjects were before the legislature, and
they provided for each separately; and when a mode is pre-
scribed and a power given to allow and classify one character
of claims, if the same power was intended to be given as to
the other it would have been as easy to express it. Not hav-
ing been expressed, it is not only fair, but in accordance with
all settled law, that it was not intended to be given.

But again, giving credit to the legislature for enacting laws
in view of well-established principles of equity and the rights
of the creditors of a partnership to the extent of the part-
nership assets, and examining the provisions of the act under
consideration bearing on the question, we think it clear that
the legislature did not intend to make the allowance and
classification of a partnership debt by the probate court a
condition precedent to the right of a creditor of the firm to

recover on the bond given either by the surviving partner, or the administrator of deceased member of the firm. The legislature knew that the creditors of the firm had a right to be paid out of the partnership property, and therefore it provided in accordance with the principle of survivorship that the surviving partner should first retain the partnership property; but in order to protect the interest of the decedent, the statute (§ 47) compelled him to give a bond which required him "to apply the property to the payment of the partnership debts," and which also required him to render an account of his doings to the probate court. Two leading ideas are manifest in this section — the payment of the partnership debts, and the preservation and payment to the administrator of any balance that might be due the estate of the decedent. Could it be claimed that if the surviving partner had given the bond required by the statute, taken the goods and converted them to his own use, that these plaintiffs could not recover against his bondsmen, because their demand had not been allowed, classified and ordered paid by the probate court? Would the probate court have the power to allow a claim that might be presented to the survivor, and the power to order him to pay it? It would be a judgment as well against himself as the estate of the deceased, and where, either in the constitution or statute laws, does the probate court obtain the power or jurisdiction to render judgment against a surviving partner? The constitution says it "shall have such probate jurisdiction and care of the estates of *deceased persons* as may be prescribed by law," and not jurisdiction to render judgments against *living persons* on ordinary common-law liabilities. It is true, the law (§ 48) gives the probate court power to cite him to account, and to adjudicate upon the account, as in cases of an ordinary administrator; and this power is a necessary power to protect the interests of the decedent; his duty and obligation is to pay partnership debts, and in adjudicating upon his accounts, if the court should find that he had paid out money of the partnership in payment of other than partnership debts, the court would disallow it "as in cases of ordinary administration;" and this is all the power conferred by "law" on the probate court over the surviving partner.

But again, the legislature wisely anticipating the very state of affairs in this case, provided that if the surviving partner should not give the bond, then the administrator of the decedent upon giving bond should be entitled to the possession

of the property of the partnership — to be dealt with, how and in what manner? As the other property of the estate? No, for the statute says in express terms "he shall with the partnership property pay the debts of the late firm." When? Within a year, or three years, as he pays by statute the other debts of the decedent? No, but "with as much expedition as possible," and pay the surviving partner his proportion of the excess. Is it not clear that the legislature intended simply to substitute the administrator for the surviving partner, giving him the same powers with reference to the partnership effects, and imposing upon him the same duties? He is to pay the debts "*with as much expedition as possible*," not wait for the process of allowance in the probate court. It is not the debt of an estate, nor of a decedent, nor of an individual he is commanded to pay. In carrying out the trust he is not acting as administrator, nor are his bondmen liable on his administrator's bond for his misdeeds in the execution of this trust. This has already been decided by this court. (*Glass Co. v. Ludlum*, 8 Kas., 40, 47.) He is neither more nor less than a special trustee as to this property and this class of debts. He needs no order from the probate court to pay them. By accepting the trust he takes upon himself the burdens of deciding what are debts. While we feel an abiding conviction that upon principle, analogy and reason we are right in our conclusions, we are not without the very best of authority to sustain our position. The case of *The State to use of Bredell's Executor v. Baldwin*, 27 Mo., 103, is directly in point, the decision being upon the statute of Missouri of 1845, from which our statute is taken, and the court in that case, page 107, say "*the law does not require partnership demands to be allowed by the court.*" And the same court, in the case of *Green's Adm'r v. Virden*, 22 Mo., 506, hold the same doctrine, and deny to the probate court any power over the partnership assets, or over the surviving partner, except those expressly granted, to-wit, to cite him to account and to adjudicate upon his account.

A second question of importance is this: No citation was ever issued by the probate court to the surviving partner as

2. Probate court; jurisdiction over surviving partner.

provided for in § 49 of the administrator act; (Comp. Laws, 520.) That section reads: "In case the surviving partner, *having been duly cited for that purpose,* shall neglect or refuse to give the bond

required," etc., "the executor or administrator on the estate of such deceased partner, on giving a bond as provided in the following sections, shall forthwith take the whole partnership estate," etc.    It is earnestly insisted by counsel for plaintiffs in error that such citation was *jurisdictional*, and that "the probate court had not power or jurisdiction to make any order in relation to the partnership property, or to assume jurisdiction over the same, or to require Samuel S. Ludlum to give the bond mentioned in § 50 of said act, and that therefore the bond sued on is void, because the proper steps had not been taken to divest the rights of John B. Ludlum, or to confer power to control the property on the administrator of the deceased partner."    We think that this citation is a matter personal to the surviving partner, and that while he may insist on his right to the possession of the partnership property until after such citation, and a refusal or neglect to give the statutory bond, yet that when he comes voluntarily into the probate court and declines to take any further charge of the partnership property he waives the necessity of any citation, and cannot thereafter object that none was served upon him; and that the objection to the subsequent proceedings which he is estopped from making, no one else can make for him, or for themselves.    It is jurisdictional in the sense that a summons is.    It brings the party into court.    But when a party voluntarily appears in court, it is unnecessary to inquire what if any process has been served upon him. Counsel also criticises the paper filed in the probate court by John B. Ludlum, and says that "its legal effect was simply a refusal on the part of John B. Ludlum to continue the business of the late firm, and a request that the administrator of Wm. H. Hays deceased (whoever he might be) should take charge of his (John B. Ludlum's) interest in the property of said firm — thus in substance merely appointing such administrator, whoever he might be, his agent to take charge of the property."    The paper is addressed to the probate judge, and reads: "I as the surviving partner of the late firm of Hays & Ludlum do refuse to continue the business of the late

firm, and request that the administrator of Wm. H. Hays

*3. Written in-
struments.
Construction
— rule of.*

deceased take charge of my interest in the property of said firm," etc. We think there is no difficulty in giving proper effect to this writing. True, it purports to be a refusal to continue the business instead of a refusal to give the bond, as named in the statute; but every instrument must be construed in the light of the circumstances under which it is executed. One or the other, the surviving partner or the administrator, was to take the property, give bond, and close up the partnership business. By this paper the surviving partner comes into court and in unmistakable language declines in favor of the administrator. No form of refusal is prescribed. This was sufficient.

Again, counsel insist that the bond sued on is void because the conditions in it are not any of them the conditions speci-

*5. Administra-
tor's bond;
partnership
property.*

fied in the statute. The statute, § 50, provides that " before proceeding to administer upon such partnership property, as provided in the *preceding section*," the administrator shall give bond "conditioned that he will faithfully execute that trust, with no unnecessary waste or expense." The form of a bond is not given in this case, as it is for the surviving partner, or in ordinary administration. In order to understand what trust is intended, we must refer to the *preceding section*. There it is provided that he shall take the whole partnership estate into his possession, and with it pay the partnership debts with as much expedition as possible, and return to the surviving partner his proportion of the excess if any there be. Now, the bond in this case (which seems to have been in part copied from the form given for a bond of a surviving partner,) covers all these points. It recites the refusal of the surviving partner, and that the administrator has taken possession of the partnership property, and the first condition is, that he shall "faithfully execute the trust incurred by such act with no unnecessary waste or expense." If this had been all, we think the bond would have been sufficient. It however goes on and specifies more in detail the obligation assumed by the administrator.

Again, it is urged that if defendants in error had any cause of action it was barred before suit was brought. The petition was filed Oct. 24th, 1868. The verdict shows that the debt was due from Hays & Ludlum to defendants in error on the 6th of July, 1865, more than three years prior thereto. But no cause of action could arise on the bond until it was given, and that was in 1866; none against Ludlum, in his individual capacity, or against his sureties until after a breach of the condition of the bond, and a conversion of the goods to his own use. When the administrator assumed the charge of the partnership estate the defendants in error had a valid claim against that estate. He had ample means to discharge that indebtedness. Instead of so doing he converted those means to his own use, and thereby created a personal liability against himself and the sureties in his bond, which dated from the time of such conversion.

<div style="margin-left:2em; font-size:smaller">6. Action against administrator; when it accrues.</div>

We do not think the amendments to the petition were so radical as to make the last petition present a cause of action substantially different from that in the first.

Other questions have been presented by counsel for plaintiffs in error in their brief, but we cannot stop to discuss them at length. We have endeavored to examine them all carefully, and after such examination we are satisfied that no substantial error appears in the record, and that the judgment must be affirmed.

All the Justices concurring.