No. 30,567.

GRACE TORRANCE CLARK, as Administratrix with the Will Annexed of the Estate of Thomas S. Moffett, Deceased, *Appellee*, v. LEWIS B. ANDREWS et al., *Appellants*.

(13 P. 2d 294.)

Opinion filed July 9, 1932.

*Francis C. Downcy, Hugh B. Downey* and *G. C. Downey,* all of Kansas City, Mo., for the appellants.

*A. E. Watson* and *Martin J. O'Donnell,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This case is an appeal from a decision of the probate court. Judgment was entered reversing the order of the probate judge. The appeal is from that judgment.

Prior to August 27, 1927, there was a partnership known as Andrews, Lewis and Moffett, consisting of J. C. Lewis, L. B. Andrews and Thomas S. Moffett. There was another partnership known as Moffett Brothers and Andrews. It was composed of Thomas Moffett, John Moffett and L. B. Andrews. Thomas Moffett and L. B. Andrews were members of both partnerships. There was another partnership known as Moffett Brothers, composed of Thomas Moffett and John S. Moffett. This partnership only appears incidentally in this case. The business in which the partnerships were engaged was that of owning and operating large ranches and in raising wheat and live stock and kindred pursuits. The members of these partnerships were all residents of Missouri.

On August 27, 1927, the death of John Moffett dissolved the partnership of Moffett Brothers and Moffett Brothers and Andrews. The surviving partners in Moffett Brothers and Andrews were Thomas Moffett and L. B. Andrews. Thomas S. Moffett, under the statute as surviving partner and with the written consent of L. B. Andrews as to the firm of Moffett Brothers and Andrews, began the administration of both estates. Thomas S. Moffett died on December 22, 1930, while engaged in the administration. On January 5, 1931, Grace Torrance Clark, appellee herein, was appointed administratrix of the estate of Thomas Moffett.

The remaining partnership, Andrews, Lewis and Moffett, was dissolved by the death of Thomas S. Moffett. Mr. Lewis subsequently

died, leaving L. B. Andrews, appellant herein, as the sole surviving partner of both estates. On January 8, 1931, appellee secured an order of the probate court of Wyandotte county directing her to take into possession all of the partnership assets of the three dissolved partnerships. This order was entered by the probate court without any citation or notice to the surviving partner.

The dispute in this case is between Mrs. Clark, administratrix of the estate of Thomas S. Moffett, and L. B. Andrews as surviving partner. Each claims the right to administer the partnership estates of Moffett Brothers and Andrews, and Andrews, Lewis and Moffett.

On January 12 Mrs. Clark filed a bond and authenticated copy of the Wyandotte county proceedings in the probate court of Chautauqua county. It should be noted here that a large ranch belonging to the partnership is located in that county. On January 22 L. B. Andrews procured the setting aside of the Chautauqua county order and presented his own bond to the probate court of Chautauqua county and had it approved. He took similar action in the counties of Meade and Logan, where there were large holdings of property of the partnerships.

On January 19, 1931, L. B. Andrews filed a motion in the probate court of Wyandotte county in which he asked to have the court modify its order of January 8. The hearing on this motion was continued to the 18th day of February. On that date the motion was taken under advisement. On the 30th day of March, 1931, the court entered its order modifying its order of January 8. The effect of this order was to withdraw from Mrs. Clark the right to administer the partnership estates of Moffett Brothers and Andrews and Andrews, Lewis and Moffett. This order was appealed to the district court of Wyandotte county. That court reversed the decision of the probate court. This appeal is from that judgment.

The district court held in a written opinion that the probate court had full authority to make the order of January 8 in which Mrs. Clark was directed to take charge of the affairs of the two partnerships; that a citation to the surviving partner was not necessary to confer jurisdiction upon the court; that the order was not void and any errors therein could only be corrected by appeal; that the motion of January 19 constituted a collateral attack and that the probate court had no authority and had no power to vacate and set aside its judgment after the end of the term.

Attention will first be given to the question of the authority of

the probate court to modify its judgment at the subsequent term. Appellee points out the provisions of R. S. 20-1103. It is as follows:

"Each probate court shall hold regular terms commencing on the first Monday of each month and continuing until the first Monday of the next month."

It will be observed from the statement of facts that the matter was continued from term to term. In the case of *Smith v. The Eureka Bank,* 24 Kan. 528, an executrix published notice of final settlement of the estate at the April term, 1876. At that term the matter was continued to the July term and at that time a continuance was ordered to its October term. No entry was made on the record at the succeeding October, January or April terms, but at the July term, 1877, the final settlement was approved and the executrix discharged. This court held that the probate court had not lost jurisdiction by delay and that its order was not void. The court said:

"There can be no question of the power of the court to order a continuance . . . Every court, except where limited by statute, has power to continue proceedings before it from term to term. . . This is one of its inherent powers. In *Life Ins. Co. v. Twining,* 19 Kan. 367, it was decided that a motion for a new trial in the district court did not become defunct by a failure to act upon it at the term at which it was filed, or to enter a formal order of continuance, but that it passed over for hearing at the subsequent term. Kindred in principle is the decision in *Bond v. White,* ante, 45, in which it was held that a case once legally commenced continues in existence until some affirmative action discontinuing it. In other words, the idea is that where jurisdiction once attaches and the action of a court is invoked the jurisdiction remains until that action is had, or the application therefor withdrawn. Does the same principle obtain in this case? Those rulings were in reference to proceedings in the district court; but why, in the absence of statute limitations, are they not applicable to all courts? Upon what principle can it be held that a district court holds jurisdiction from term to term, while a probate court, under precisely similar circumstances, loses it? Each is a court of record. The methods of acquiring jurisdiction may differ, but jurisdiction, when acquired, is as absolute and complete in one as in the other. Each has power to continue. The right of dismissal exists in each. In case of delay or refusal by either to act, a party has the same means of compelling action. Suppose the court refuses to act, is jurisdiction lost and the right to act gone? . . . Unless the statute requires action at the first term, or unless, in the nature of things, a failure then to act determines the jurisdiction or ends the proceeding, action at a subsequent term is within the power of the court." (pp. 531, 532.)

See, also, *Dye v. Railroad Co.,* 101 Kan. 666, 168 Pac. 1087; *Armourdale State Bank v. Hoel,* 120 Kan. 130, 242 Pac. 481. There is a good practical reason why the above should be the rule. Sup-

pose a matter was submitted to the probate court on the last day of the term. If the rule contended for by appellee was good then in a case of that kind the court would not be able to take the matter under advisement. Such a rule would operate to bring about hasty and poorly considered decisions. The motion to modify the order was made at the January term. The probate court had authority to modify its order during that term and that authority was retained by continuance to the subsequent terms. Since we have taken this view of the validity of the action of the probate court the question of collateral attack need not be considered.

Appellee contends that upon the death of an administering partner it becomes the duty of his personal representative to conclude the administration of the partnership estate and cites the cases of *Dayton v. Bartlett,* 38 Ohio St. 357; *Galbraith v. Tracy,* 153 Ill. 54; *State, ex rel., v. Hubbard,* 199 Mo. App. 137; *Sharp v. Sharp,* 54 Utah 262; *Bankers' Trust Co. v. Riter,* 56 Utah 525, and *Churchill v. Buck,* 102 Fed. 39, to sustain this contention. These cases have been carefully examined and are found not to support appellee's position in this case as they all involve partnerships in which there was no remaining partner left surviving after the death of the administering partner. In fact, in the Galbraith case it is specifically stated that "in the event of the death of both partners before the settlement of the partnership affairs the administrator of the last survivor stands in the shoes of his intestate and he is charged with the duty of completing the settlement." (p. 61.) The Churchill case cites 2 Bates on Partnerships, § 714, to the same effect. The case under consideration does not involve the rights or duty of the administrator of the last surviving partner. The last surviving member of both partnerships is here in person claiming the right to wind up the affairs of the partnerships.

It is the general rule that the assets of a partnership dissolved by the death of one of its members are administered and disposed of by the surviving partner, except so far as the rights and duties of the surviving partner are limited and controlled by statute. (Parsons on Partnership, 4th ed., § 344; 47 C. J. 1043; 20 R. C. L. 1001; *Crews v. Sweet,* 125 S. C. 303; *Easton v. Courtwright,* 84 Mo. 27.)

This is the law in Kansas, except as modified by R. S. 22-402 and 22-405, which require the surviving partners to give bond. R. S. 22-405 provides:

"In case the surviving partner, having been duly cited for that purpose,

shall neglect or refuse to give the bond required in this article, the executor or administrator of the estate of such deceased partner, in giving a bond as provided in the next section, shall forthwith take the whole partnership estate, goods and chattels, rights and credits, into his own possession, and shall be authorized to use the name of the survivor in collecting the debts due the late firm."

The provision of the above statute and the rights of surviving partners to administer the partnership estate have been considered by this court. In the case of *Carr v. Catlin*, 13 Kan. 393, cited and relied upon by both parties, it was said:

"A second question of importance is this: No citation was ever issued by the probate court to the surviving partner, as provided for in section 49 of the administrator act. . . . It is earnestly insisted by counsel for plaintiffs in error that such citation was jurisdictional, . . . We think that this citation is a matter personal to the surviving partner, and that while he may insist on his right to the possession of the partnership property until after such citation, and a refusal or neglect to give the statutory bond, yet that when he comes voluntarily into the probate court and declines to take any further charge of the partnership property, he waives the necessity of any citation, and cannot thereafter object that none was served upon him; and that the objection to the subsequent proceedings which he is estopped from making, no one else can make for him, or for themselves. It is jurisdictional in the sense that a summons is. It brings the party into court. But when a party voluntarily appears in court, it is unnecessary to inquire what, if any, process has been served upon him."

In *Teney v. Laing*, 47 Kan. 297, 27 Pac. 976, it was said:

"Under the administration laws of this state, as declared by the statutes upon executors and administrators, and as these statutes have been interpreted by this court, the primary right to settle the affairs of a partnership consisting of two persons, when one of the members of the firm dies, rests with the surviving partner; but if the surviving partner, after having been duly cited for that purpose, neglects or refuses to give the bond required, the administrator of the personal estate of the deceased partner may execute the bond required by section 2820, General Statutes of 1889, and take the whole partnership property into possession, collect the debts due the late firm, pay those due from the late firm, and pay over to the surviving partner his proportion of the excess, if any there be. . . . This court, in the case of *Blaker v. Sands*, 29 Kan. 551, upon the question of the rights of possession of the surviving partner, uses this language:

" 'Upon the death of a partner the survivor becomes a trustee for all concerned. He holds the legal title to all the personal property, choses in action and other assets of the firm, and his control of all the partnership assets, real and personal, legal and equitable, is absolute and indefeasible, limited only by the purposes for which it is granted to him, and the provisions of the statute concerning partnership estates. Until the plaintiff was cited under the provisions of section 35, chapter 37, Comp. Laws of 1879, to give bond as a surviving partner, he had the right to the possession of the partnership property.

(Citing *Carr v. Catlin,* 13 Kan. 393.) The citation was a matter personal to the surviving partner, and it was an act required to be done to divest him of his right to control and dispose of the property. Unless he was cited or voluntarily appeared in court and refused to give the statutory bond, or in some other way declined to take charge of the partnership property, so as to waive a citation, he was never divested of his control over said property.' "

The legal status of L. B. Andrews as surviving partner of the two partnerships of which he was a member is not affected by the prior administration of the estates of Thomas S. Moffett as surviving partner and his death during the course of his administration. A partnership firm is not dissolved for all purposes until the business of the firm is wound up, its debts paid, and remaining partnership property divided between the partners. The partnership still remains as a body which owns property and owes debts. The position of L. B. Andrews is no different than it would have been had Thomas S. Moffett been the only other member of the partnership and the partnership had been dissolved at the date of his death.

It is argued by appellee that appellant, the surviving partner, by filing a motion in the Wyandotte county probate court, without complying with the statute at that time with reference to the giving of a bond, waived his right to administer on the partnership estates. This argument might be true if the appearance had been general, but the motion to modify recites that the parties are "appearing for the purpose of this motion only," and the subsequent proceedings cannot be held to constitute a general appearance. The statute provides no time limit within which a surviving partner must give bond, especially where no citation was served upon him. It cannot be contended that appellant herein has refused or neglected to comply with that provision of the statute when the very purpose of his motion and the action initiated by him in this case are an assertion of his right to administer the estates as surviving partner. As we have already noted from the statement of facts with reference to filing the bonds in Chautauqua, Meade and Logan counties by L. B. Andrews, his conduct has been consistent throughout with his claim of right to administer these estates as surviving partner.

It is also contended that Andrews waived his right as surviving partner by consenting to the administration of Thomas S. Moffett, his cosurvivor. We cannot assent to this view. The arrangement entered into was not unusual and in fact was no doubt considered by the partners as one well suited to expedite the administering of the properties. The consent agreement recites merely that the partners "desire that all the property and business in the state of Kansas of

said firm . . . may be delivered to . . . Thos. S. Moffett that he may undertake the management thereof." The construction as contended for by appellee cannot be placed upon this agreement.

Appellees call attention to R. S. 22-328, which provides that "letters testamentary and of administration shall in no case be granted to a nonresident of this state." The claim is made that since Andrews is a nonresident that he is not eligible to administer the partnership estates. We have noticed from the cases *supra* that the general rules applicable to decedent estates do not govern the settlement of partnership affairs by surviving partners. See, also, 20 R. C. L. 1001. If the contention of appellee in this respect should be sustained, all surviving nonresident members of a partnership might be excluded from the right to liquidate its affairs and their property be put in charge of one who is a total stranger to the partnership business and affairs. Such a situation can only be brought about by specific statute clearly designed for that purpose. We do not consider that this has been done in this state.

The judgment of the district court is reversed with directions to sustain the order of the probate court from which the appeal to the district court was taken.