## Fuller *vs.* McDonald, *adm'r.*

If the payee of a negotiable note indorses his name in blank on the back, he thereby assumes only the legal liability of an indorser, depending on written evidence, which cannot be varied by parol.

But parol evidence is admissible to show that the right to demand and notice was waived by the indorser.

It is not necessary that such waiver be positive. It may result by implication, from usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver was intended.

THIS was an action of *assumpsit* by the indorsee against the administrator of the late Gen. *John M'Donald* as indorser of a promissory note, of the following tenor :—"*Limerick, April* 8, 1820. For value received I promise to pay *John M'Donald* or his order three hundred and twenty-one dollars and forty-six cents on demand with interest. *Davenport Tucker.*" At the bottom of the note was the following memorandum ;—"The indorser guarantees the eventual payment of the above note."—On the back were these indorsements ;—"20 *April* 1820, *pr.* receipt—Received one hundred dollars, and a receipt given for the same. $100.—15 *September,* 1826. Received on this eleven dollars 94-100 being an error and interest on note given up. $11,94.—And underneath— "*John M'Donald.*"—The declaration contained a second count for money had and received.

At the trial, which was before the Chief Justice, the plaintiff offered the depositions of *James Means,* with the note annexed, and of *Robert M. Barnard;* and the depositions of *Earl Sturtivant,* with a memorandum annexed, and of *Eleazer Howard, Jr.;* to the admission of each of which the defendants objected, but the objections were overruled.

*Means* testified that in the latter part of the year 1827, *Tucker* being in *Boston,* he presented the note to him and requested payment; to which *Tucker* replied that he was then unable to pay it, but thought he should be in the spring. *Means* then requested

*Sturtivant* to take notice of what was said, and make a memorandum of it, which he did.

*Barnard* testified that in *October* 1825, he received the note of *M'Donald* in payment of a debt which the latter owed him ; *M'-Donald* at the same time saying that *Tucker* would pay the note the next time he came to *Boston,* which was expected to be the next spring ; and if he did not, that he, *M'Donald,* would pay it the next time he came to the city ;—that he told *M'Donald* that he would not take the note unless he would agree to those terms, to which he assented ;—of which the witness directed his clerk, Mr. *Howard,* to make a memorandum ;—that the next time he saw *Tucker* he requested payment of the note, and *Tucker* replied that he had the money of Gen. *M'Donald* under particular circumstances, that he could not pay it then, and should not until he could make it convenient. *Tucker* further stated that there was an error of $11,94 in the note. In *September* 1826, after the death of the indorser, the witness stated these facts to his administrator, who corrected the error by paying the amount in money, which was indorsed on the note, at the same time giving the memorandum annexed to *Sturtivant's* deposition. In the spring of 1827, *Barnard* failed, and the note was transferred, with other effects, to his assignees, of whom the plaintiff was one. In a second deposition *Barnard* testified that he had no interest in this suit ; and annexed a copy of the assignment to his creditors, from which it appeared that they accepted the property assigned, in full of their respective demands, and discharged him from all further claims.

*Sturtivant* testified that the note was in the hands of the assignees on the twenty-eighth day of *December* 1827, at which time payment was demanded of *Tucker,* who promised to pay the note in two or three months ; of which, at their request, the witness made a memorandum, on the back of an original paper signed by the present defendant, and annexed to his deposition, in these words : " *Boston, Sept.* 15, 1826. *Memorandum,* that I, as administrator of the goods and estate which were of *John M'Donald,* late of *Limerick,* in the county of *York,* and State of *Maine,* deceased, agree

Fuller v. McDonald, Adm'r.

to guarantee the eventual payment of a note which my father sold to *R. M. Barnard,* against *Davenport Tucker,* dated *Limerick, April* 8, 1820, which was the agreement of my father. *John McDonald,* administrator."

*Howard* testified that he was present at the indorsement of the note to *Barnard,* and recollected the facts as the latter had stated them in his deposition;—that he made the memorandum on the bottom of the note at *Barnard's* request;—and that he was also present in *Sept.* 1826, at the conversation testified to by *Barnard,* between him and the administrator, who thereupon, in his presence, made the memorandum annexed to *Sturtivant's* deposition.

It was admitted that Gen. *M'Donald* died *March* 16, 1826 ; and that in the summer of 1829 the plaintiff's attorney called on the defendant for payment of the note, who requested him to sue *Tucker,* which he did, and obtained judgment, but the execution was returned unsatisfied.

Whereupon a nonsuit was entered, for the purpose of referring to the court the question of the defendant's liability, he agreeing to be defaulted, if adjudged liable to pay the note.

*Appleton* and *M. Emery,* for the plaintiff, cited the following authorities to show that the action was rightly brought in the name of *Fuller : Bingham v. Marean,* 7 *Pick.* 40 ; *Cole v. Cushing,* 8 *Pick.* 48 ; *Bayley on bills,* 67 ; *Frye v. Baker,* 4 *Pick.* 382 ; 2 *Stark. Ev.* 247 ; *Blakely v. Grant,* 6 *Mass.* 386 ; *Upham v. Prince,* 12 *Mass.* 14 ; *Smith v. Clark,* 1 *Esp.* 180 ; *Lovell v. Evertson,* 11 *Johns.* 52 ; *Williams v. Matthews,* 3 *Cowen,* 252 ; *Thompson v. Robinson,* 4 *Johns.* 27 ; *Bank of Utica v. Smith,* 18 *Johns.* 230 ; *Dean v. Hewitt.* 4 *Wend.* 257 ; *Cobb v. Little,* 2 *Greenl.* 261 ; 3 *Greenl.* 84 ;—and that it was apparent that notice was waived by the indorser ; or, if not, yet upon the whole evidence the plaintiff was entitled to recover on either count : *Taunton v. Richardson,* 5 *Pick.* 436 ; 2 *Stark. Ev.* 273, 275, note ; *Burrill v. Smith,* 7 *Pick.* 291 ; *Hill v. Buckminster,* 5 *Pick.* 391 ; *Baxter v. Penniman,* 8 *Mass.* 134 ; *Brown v. Anderson,* 13 *Mass.* 203 ; *Emerson v. Thompson,* 16 *Mass.* 439 ; *Atkins v. Sawyer,* 1 *Pick.* 192 ; 1 *Phil. Ev.* 74 ; *Pierson v. Hooker,* 3 *Johns.* 68 ; *Durgee v. Den-*

*nison*, 5 *Johns.* 248 ; *Agan v. McMannus*, 11 *Johns.* 180 ; *Hall v. Freeman*, 2 *Nott & McCord*, 479 ; *Gibbon v. Cogan*, 2 *Campb.* 183 ; 6 *East.* 16 ; 7 *East.* 231 ; *Gunson v. Mott*, 8 *Serg. & Lowb.* 478 ; *Boyd v. Cleaveland*, 4 *Pick.* 525 ; *Barker v. Parker*, 6 *Pick.* 80 ; *Whitwell v. Johnson*, 17 *Mass.* 449 ; *Hopkins v. Liswell*, 12 *Mass.* 52 ; *Peacock v. Rhodes*, 2 *Doug.* 363 ; *Grant v. Vaughan*, 3 *Burr.* 1516 ; *Ellis v. Wheeler*, 3 *Pick.* 18 ; 2 *Phil. Ev.* 13, 14, 21 ; *Dunlop v. Shearer*, 1 *Cranch*, 418 ; *Bayley on bills*, 244—6 ; *State bank v. Hurd*, 12 *Mass.* 172 ; *Chitty on bills*, 170. That the want of privity was no valid objection against the plaintiff's recovering on the money count : *Wilde v. Bishop*, 4 *Pick.* 421 ; *Hill v. Ely*, 5 *Serg. & Rawle*, 363 ; *Davenport v. Mason*, 15 *Mass.* 85 ; *Barker v. Prentiss*, 6 *Mass.* 430 ; *Little v. Blunt*, 9 *Pick.* 488. And to the competency of the evidence objected to : 1 *Phil. Ev.* 226 ; *Ely v. Forward*, 7 *Mass.* 25 ; *Phillips v. Bridge*, 11 *Mass.* 242 ; *Bean. v. Bean*, 12 *Mass.* 20 ; *Locke v. N. Amer. Ins. Co.* 13 *Mass.* 61 ; *Cotchil v. Discon*, 4 *McCord*, 311 ; 5 *Wend.* 55 ; 2 *Stark. Ev.* 746 ; *Henry v. Morgan*, 2 *Bin.* 497.

*J. & E. Shepley*, for the defendants, argued that the evidence furnished nothing to take the case out of the ordinary rules applicable to indorsed notes ; and that therefore the defendant was not liable, for want of seasonable demand and notice. *Groton v. Dalheim*, 6 *Greenl.* 476. If it is any thing else, it is a contract of guaranty ; which was a promise to *Barnard* alone, and not assignable, so as to entitle this plaintiff to sue in his own name. *Scott v. McLellan*, 2 *Greenl.* 203 ; *Chitty on bills*, 448. Whatever it was, the proof is in writing, by the indorsement of the party's name on the back of the note. Over this, the holder may write whatever the law implies by the act of transfer, but nothing more. To admit parol evidence to set up any other contract, as made at the same time, would be to charge the party in the double capacity of indorser and guarantor ; and would violate the rule which does not admit parol evidence to contradict or add to a written contract. *Barry v. Morse*, 3 *N. Hamp.* 132 ; *Bayley on bills*, 336 ; *Hopkins v. Liswell*, 12 *Mass.* 54 ; *Field v. Nickerson*, 13 *Mass.* 138 ; *Renner v.*

*Bank of Columbia,* 9 *Wheat.* 587 ; *Free v. Hawkins,* 8 *Taunt.* 92 ; *Britton v. Webb,* 2 *Barnw. & Cresw.* 483 ; *Moies v. Bird,* 11 *Mass.* 440. But if the parol evidence is admitted, it establishes a contract altogether collateral, upon which here is no proper count to entitle the plaintiff to recover. *Dow v. Tuttle,* 4 *Mass.* 414. And being a conditional undertaking, the defendant is absolved by the laches of *Barnard.* *Oxford bank v. Haines,* 8 *Pick.* 426 ; *Cobb v. Little,* 2 *Greenl.* 261 ; *Lincoln & Kennebec bank v. Page,* 9 *Mass.* 157 ; *Berkshire bank v. Jones,* 6 *Mass.* 524 ; *Thornton v. Winn,* 12 *Wheat.* 183 ; *Garland v. Salem bank,* 9 *Mass.* 408 ; *Trimble v. Thorn,* 16 *Johns.* 152 ; *Griffin v. Goff,* 12 *Johns.* 423 ; *Miller v. Hackley,* 5 *Johns.* 375 ; *Tower v. Durell,* 9 *Mass.* 332 ; *Warder v. Tucker,* 7 *Mass.* 448.

The opinion of the Court was read at the next *September* term in *Alfred,* as drawn up by

WESTON J. The deposition of *James Means,* and the first deposition of *Robert M. Barnard ;* also a memorandum signed by the defendant, and another by *Earl Sturtevant,* used at the trial, were objected to by the counsel for the defendant. The first deposition of *Barnard,* taken by itself might be liable to objection, as it justified the inference that he was interested in the suit, and ultimately to be benefited by it, if the plaintiff prevailed. But laying his deposition out of the case, the same facts are testified to by *Eleazer Howard.* Besides, in *Barnard's* second deposition, given after all interest on his part had ceased, he reaffirms the facts stated in the first ; thus removing every objection to his testimony.

It has been urged, that the liability of the intestate and of the defendant, if liable at all, is upon a contract of guarantee. And that if the plaintiff from the evidence, if competent, could maintain an action upon such a contract, he has no count charging the defendant upon this ground. An indorser is conditionally liable ; so is a guarantee ; but the latter may be holden, where the former would not be. The liability of a guarantee, and the steps necessary to charge him, have been well set forth and illustrated in the case of

28

the *Oxford bank v. Haynes*, 8 *Pick.* 423.  He is generally either the payer of a note not negotiable, or some person not named in the body of the note or other instrument, of which he becomes the guarantee.  We are not aware of any case in which the payee of a negotiable note has been charged as a guarantee, who indorses his name upon the note.  If however he distinctly and expressly engages as such, there does not appear to be any objection to his being so charged.  But it is a contract of a specific character, governed by its own principles.  And there is certainly great weight in the position, that upon such an engagement, he cannot be held as indorser, relying upon this contract as evidence of a waiver of demand and notice.  It would be confounding principles well settled, which it is important to preserve.  But if, as was the present case, the payee of a negotiable note indorses it in blank, he thereby assumes a legal liability as indorser, depending on written evidence.  It would affect his liability, and materially vary his undertaking, if it could by parol evidence be converted into a contract of guarantee.  If the depositions and memoranda objected to at the trial, were introduced and relied upon for this purpose, changing as they would the legal effect of a written contract, they are not warranted by the law of evidence, and are clearly inadmissible.  And we are well satisfied that if the intestate was not liable as indorser, neither he, nor the defendant representing him, can be charged in this action.  If he was, either count in the plaintiff's declaration is sufficient.  Upon this point we entertain not the least doubt.  The note was negotiable.  The intestate was the payee ; and he indorsed it in blank.  Nothing was written over his name, at the time or since ; nor does it appear that he requested or authorized the making of any memorandum on the note.  That was made by *Howard*, under the direction of *Barnard*, as their sense of what the intestate had agreed.  It constituted no part of his contract.  By his name on the back in blank, he assumed the liability of an indorser of a negotiable note, made payable to himself.  The memorandum is not in itself evidence ; but may be used by the witnesses to refresh their memory.  Unless demand and notice was waived by the indorser, there is no sufficient evidence of either to charge him.  The case therefore

turns upon the question, whether it does appear by competent proof, that demand and notice was waived. This may be proved by parol. It does not change the character of the contract, or convert it into one of a different species. It only relinquishes a condition, to which the party would otherwise have been entitled. It does not appear that *Howard* in his memorandum on the note, used the language of the intestate. What he did agree, is stated by *Howard* and by *Barnard* in their depositions. They state from recollection, agree in their testimony, and neither appears to be at a loss as to what passed at the time of the indorsement. The intestate was indebted to *Barnard.* The note, payable on demand, had been then given over five years. It had been some time prior in the hands of *Barnard.* The intestate urged him to receive it in payment, and pass it to his credit. *Barnard* was reluctant. It had been long due; and it is evident from the testimony that he relied only upon the credit of the intestate. But upon the urgent solicitation of the latter, and upon his express assurance and engagement, that if the maker did not pay the note the next time he came to *Boston*, he, the intestate, would the next time he came; *Barnard* received the note, and passed it to his credit. We are of opinion that the inference reasonably and justly to be drawn from this testimony is, that the legal steps of demand and notice, otherwise necessary to charge an indorser, were waived by the intestate. To hold his estate discharged from this liability would, upon these facts, unjustly throw a loss upon *Barnard* or his assignee, without any fault or negligence on their part. *Barnard* did, in relation to the note, every thing the parties could have contemplated. *Howard* thinks he wrote to the maker at the time of the indorsement. At any rate he is sure that he saw the note when he came to *Boston*, and that payment was demanded of him by *Barnard.* He did not pay. Then the intestate was to pay when he came to *Boston ;* and we think the fair implication is, that he waived notice of the failure of the maker to pay, until he could be apprized of it on his arrival in *Boston. Boyd v. Cleaveland, 4 Pick.* 525, is a strong authority for the plaintiff; and it is a case decidedly in point. It is not distinguishable from the case before us. It did not convert a contract of guarantee into evidence of

a waiver of demand and notice. *Cleaveland* was an indorser ; not a guarantee. He could not be made such by parol ; but from what passed between him and *Boyd,* when the latter received the note, he was deemed, and we think properly, to have waived his right to demand and notice. It is not necessary that such waiver should be direct and positive. It may result by implication from usage, or from any understanding between the parties, which is of a character to satisfy the mind that a waiver was intended.

The nonsuit is taken off, and a default is to be entered.

*Defendant defaulted.*